14863

LIMEHOUSE v. BLACKWELL *ET AL.,* BOARD OF STATE CANVASSERS

(2 S. E. (2d), 483)

*Messrs. G. L. B. Rivers, J. Waties Waring* and *Robert McC. Figg, Jr.,* for petitioner,

*Messrs. John P. Grace* and *J. C. Long,* for intervener,

April 10, 1939.

The opinion of the Court was delivered by MR. JUSTICE FISHBURNE.

The facts out of which this controversy arose, briefly stated, are these: William H. Dunkin was elected Clerk of Court for Charleston County in the general election held in November, 1936, and thereafter duly qualified and assumed the duties of the office. He died in the early part of 1937, and the Governor appointed O. T. Wallace to fill the vacancy thus created, his commission "to continue in force for the term provided by law." Wallace qualified and is now discharging the duties of his trust. He claims that he was appointed to fill the entire unexpired term of William H. Dunkin.

Chris M. Limehouse, the petitioner herein, entered the Democratic primary in August, 1938, as a candidate for Clerk of Court, and was nominated therefor. As such nominee, in the general election held in November, 1938, he received 4,263 votes. The Board of County Canvassers, however, refused to count these votes, holding that there was no vacancy in the office. Limehouse then filed a protest against such ruling, and secured from a Circuit Judge an order re-

quiring the county board to preserve the ballots and to make return of the number of votes cast for the office of Clerk to the Board of State Canvassers. After this mandate of the Court was complied with, the State Board duly considered the appeal of Limehouse from the action and rulings of the county board, and held that "as 1938 was not the year in which to elect a Clerk of Court in Charleston County, the attempted election now under contest before this Board of State Canvassers is void," basing its decision upon the case of *Cannon v. Sligh et al.,* 170 S. C., 45, 169 S. E., 712.

Limehouse thereupon presented to the Chief Justice a petition praying that a writ of *certiorari* issue requiring the Board of State Canvassers to certify to this Court all records in the matter. Such order was issued and in due time its terms were fully complied with by the respondents, O. T. Wallace being permitted to intervene and to file a return should he be so advised.

The contentions of counsel were presented with much earnestness at the bar of this Court, and we have given to the matter the consideration which its importance deserves. Mr. Justice Bonham has written a very able opinion, in which he holds that Limehouse was duly elected Clerk of the Court for Charleston County at the general election in November, 1938, and is entitled to hold such office until the general election of 1940. That is to say, that Limehouse was elected for a term of two years. We regret that we are unable to concur in this view. A study of the pertinent constitutional and statutory provisions, and of the decisions of this Court judicially interpreting same, convinces us that the Board of State Canvassers reached a correct conclusion.

The controlling question in this case, as we see it, is whether Limehouse was elected, if elected at all, for a term of two years or for a term of four years.

As this case is undoubtedly controlled by the decision in *Cannon v. Sligh, supra,* and authorities there cited, it becomes unnecessary to discuss the question at any great length. A comparison of the facts of the two cases discloses

that they are practically the same. The election of Cannon under which he claimed the office of Clerk was held in 1930, which was not the year for holding the regular election to fill such office in Darlington County as provided by statute, and the election in the case at bar at which Limehouse claims to have been elected was held in 1938, which was not the year for the regular election of the Clerk of Court for Charleston County. In the opinion in the *Cannon case* attention is directed to the pertinent constitutional and statutory provisions governing in such matter, and which govern here. The main issue here made was whether Cannon was elected in such off year for the term of four years. The question, however, as to whether he was elected to fill the vacancy created for the unexpired term of two years, was also raised and decided.

With reference to the last-named question, the Court held that where a vacancy occurs in the office of Clerk by death or otherwise, the unexpired term cannot be filled by an election, as such unexpired term varies the term of four years fixed in the Constitution, citing a number of decisions sustaining its conclusion, among them *Wright v. Charles,* 4 S. C., 178; *Macoy v. Curtis,* 14 S. C., 367. The Court, therefore, held invalid the provision of Section 2351 of the Code of 1932, limiting the term of office under the election therein provided for to the unexpired term, basing its conclusion upon the holding in *Wright v. Charles, supra,* that "if the Legislature had, by express enactment, declared that one elected to fill the unexpired term of the office of Clerk, made vacant by any cause, should only hold for such term, it would have been inoperative and void." (170 S. C., 45, 169 S. E., 715.) It also denied, in the following language, the contention of the appellants that the part of the Act providing for the election was severable:

"The appellant contends, however, that even under such conclusion the part of the section providing for the election would not necessarily fall, but only so much of it as varies

the term of office prescribed by the Constitution; and urges that under the general principles controlling the construction of partially invalid statutes, the court should so determine and hold in this case. We are convinced, from a careful study of the section, that this position cannot be sustained. The wording of the statute presents no ambiguity. Therefore, to declare such election to be for the term as fixed by the Constitution, although the Legislature explicitly provided by the Act that 'it is to fill the unexpired term' and that the person so elected shall hold the office for such term only, would be for this court to read into the law language that was not used by the Legislature or to give to the words actually used a meaning that was not intended. We, therefore, conclude that the section, so far as it provides for the holding of the election, does not meet all the tests or conditions on which the result contended for by the appellant depends. See *Gillespie v. Blackwell,* 164 S. C., 115, 161 S. E., 869. It necessarily follows, and we so hold, that so much of section 2351 as provides for an election 'to fill the unexpired term' and for the tenure of office of the person so elected, is in conflict with section 27 of article 5 of the Constitution of 1895, and is, therefore, inoperative and void."

Hence, it is clear, Section 2351 being invalid both as to the term of office and the election therein provided for, that no authority of law remains for any election of Clerk except under Sections 2350 and 3577 of the Code providing for elections "at every alternate general election, reckoning from the year one thousand eight hundred and eighty-eight." This being true, there was and is no authority of law for any election for Clerk of Court in Charleston County until 1940, and the attempted election in 1938 was null and void.

As to the apparent contention of the petitioner, that Limehouse was elected at the general election of 1938 for a term of four years, the Court in the *Cannon case* said: "As we have observed, sections 2350 and 3577 of the Code fix

as the time for the election of clerk of court in this state every alternate general election, counting from 1888. It is not contended that these sections are in conflict with the Constitution; on the contrary, it is conceded that they are supplemenary thereto and valid." If this holding of the Court is allowed to stand, and we have been pointed to no good reason why it should not, Limehouse was not elected in 1938 for a term of four years, as the election for Clerk of Court for Charleston County, counting from the year 1888, would fall, as provided by these sections, in the year 1940.

Counsel for the petitioner asked and was granted permission to criticize the decision in *Cannon v. Sligh, supra,* with a view to having the Court overrule or modify it in certain particulars. They have not convinced us, however, that this should be done. Nor do we think, upon examination of the decisions cited and relied upon by the petitioner, that they are controlling here as contended.

The judgment of this Court, therefore, is that the petition be dismissed and the action and holdings of the Board of State Canvassers be, and hereby are, affirmed.

MR. CHIEF JUSTICE STABLER and MR. JUSTICE BAKER concur.

MR. JUSTICE BONHAM dissents.

MR. JUSTICE CARTER did not participate on account of illness.

MR. JUSTICE BONHAM (dissenting) : This matter is before this Court upon the return by the respondents to a writ of *certiorari* issued to the said board by Mr. Chief Justice Stabler of this Court.

The purpose of the writ was to have the Board of State Canvassers send to this Court all the papers pertaining to an election in Charleston County, November 7, 1938, in which the petitioner claims to have been elected to the office of Clerk of Court of Common Pleas and General Sessions for the named county, upon his petition and showing that the State Board of Canvassers refused to canvass the returns,

count the ballots and certify the result to the Secretary of State.

The recital of the events which led to this situation will be long and tedious, but it is necessary to an intelligent understanding and determination of the matters involved in the controversy.

In the general election of 1936, William H. Dunkin was elected Clerk of the Court of Common Pleas and General Sessions for Charleston County. He qualified as such officer in January, 1937, and entered upon the discharge of the duties of the office, and died soon thereafter. The Governor appointed O. T. Wallace to fill the office "his commission to continue in force for the term provided by law." The appointee duly qualified and is now in discharge of the duties of the office. He did not enter into the election held on November 7, 1938. He took the position that his appointment was to fill the unexpired term for which William H. Dunkin had been elected in 1936, and that there could be no election for the office until the general election of 1940.

The petitioner, Chris M. Limehouse, entered the Democratic primary election of 1938, and was nominated by that party as a candidate for the office of Clerk of Court. There was no other candidate for that office, and in the general election of November 7, 1938, he received all the votes cast, viz.: 4,263.

We shall not enter into a statement of all the partisan criminations and recriminations, and the legal steps which immediately preceded and followed the Democratic primary election and the general election in which the several parties, by such legal proceedings, newspaper publications and party political actions, sought to declare and enforce their respective views. It suffices to say that the Board of Canvassers for Charleston County refused to canvass, declare, and certify to the State Board of Canvassers the votes cast for Chris M. Limehouse for the office of ·Clerk of the Court for Charleston County in the general election. On Novem-

ber 7, 1938, Chris M. Limehouse began an action against the County Board of Commissioners, who became, under the law, the County Board of Canvassers, under which action Circuit Judge Mann issued a mandatory injunction directing the commissioners of election and the County Board of Canvassers to preserve the ballots and to make return to the State Board of Canvassers of the number of votes cast for the office of Clerk of Court.

Chris M. Limehouse filed his protest with the County Board of Canvassers against their refusal to count the votes which he received for the office of Clerk of Court, and against the ruling made by them that there was no vacancy in the office of the Clerk of Court and, hence, there was no election.

Thereafter, the County Board of Canvassers sent their return to the State Board of Canvassers, by which it appeared that the Democratic nominees for State offices had each received 4,263 votes. They set forth in the said return, the following: "In our judgment there was no vacancy in the office of Clerk of Court and therefore there could have been no election to fill a nonexistent vacancy."

The State Board of Canvassers heard the protest, or appeal, of Chris M. Limehouse from this action of the County Board of Canvassers and made the following decision thereabout: " * * * that it is the opinion of this Board of State Canvassers that as 1938 was not the year in which to elect a Clerk of Court in Charleston County the attempted election now under contest before this Board of State Canvassers is void. This decision is in accord with our construction of the case of *Cannon et al. v. Sligh,* 170 S. C., 45, 169 S. E., 712."

Thereupon, Chris M. Limehouse presented to Mr. Chief Justice Stabler a petition for a writ of *certiorari,* and the writ was issued by him, directing the State Board of Canvassers to certify to the Supreme Court the whole record in the matter.

This has been done and thus the record is now before this Court.

* Mr. O. T. Wallace presented to the Court his petition to be allowed to intervene in the case, file a return to the said writ and to appear before the Court and be heard if he be so advised. The petition was granted. Mr. Wallace filed his return to the writ, appeared in this Court by counsel, who filed a brief and argued the matter orally.

As we have above said, we shall not recite nor consider the various steps, legal and otherwise, by which the parties sought to enforce their varying views relative to the election for Clerk of Court, as their actions pertain to the Democratic primary election and the general election of 1938. In our judgment, the matter which by all of these routes has finally reached us for adjudication is this:

Was there a vacancy in the office of Clerk of the Court for Charleston County which could legally be filled at the general election of 1938? The determination of this question necessarily involves the determination of the tenure of the term of O. T. Wallace under the appointment of the Governor.

The Constitution of 1895, Article 5, Section 27, contains this provision: "There shall be elected in each county, by the electors thereof, one Clerk for the Court of Common Pleas, who shall hold his office for the term of four years, and until his successor shall be elected and qualified. * * *"

There is no other provision in the Constitution relating to the election of a Clerk of Court, nor to length of his term. Nor is there any provision in the Constitution relating to the filling of vacancy in such office.

The General Assembly has enacted several provisions relating to the election and term of office of Clerks of Court, and the filling of vacancies arising therein.

Section 2350, Civil Code, 1932, provides that: "There shall be a general election for the following county officers, to wit: county supervisors and county superintendents of

education held in each county at every general election for members of the House of Representatives, except in those counties in which the term of office·of the county superintendent of education and county supervisor is four years; and for the election of sheriff, coroner and clerk of the Court of Common Pleas, at every alternate general election, reckoning from the year one thousand eight hundred and eighty-eight, * * *."

Section 3577 provides that: "There shall be an election for Clerk of the Court of Common Pleas in each county by the qualified voters thereof at each alternate general election, reckoning from the election in the year 1888, * * *."

There is no controversy over the construction of these sections of the Code. But controversy and misconstruction have arisen over the provisions of Section 2531. Section 3578 and Section 3094 are necessarily involved in the consideration of the question of filling vacancies.

Section 2351 of the Civil Code of 1932 is in these words: "In the event of a vacancy at any time in any of the offices of any county of the State, whether from death, resignation, disqualification, refusal or neglect to qualify of the person elected or appointed thereto, expiration of the term of office, removal from the county or from any other cause, the Governor shall full power to appoint some suitable person, who shall be an elector of the county, and, upon duly qualifying according to law, shall be entitled to enter upon and hold the office to which he has been appointed if it be an elective office, until the next general election, when an election shall be held to fill the unexpired term, and the officer so appointed or elected shall hold said office for the term of said election or appointment, and until his successor shall qualify; * * *."

Section 3094 is in these words:

"*Officers Appointed by Governor.*—The following officers shall be appointed by the Governor:

"Any vacancy in an office of the executive department, occurring during a recess of the General Assembly. The term of such appointment to be until the vacancy be filled by a general election, or by the General Assembly, in the mode provided by law.

"Any vacancy in a county office, by r e a s o n of death, * * * of the person elected or appointed thereto, expiration of the term of office, or any other cause. The person so appointed to hold his office, in all cases in which the office is elective, until the next general election and until his successor shall qualify; * * *."

Section 3578 provides: "The clerk elected in each county shall be clerk of the Courts of General Sessions and Common Pleas, and of all other courts' of record therein, except the Court of Probate. In the event of any vacancy in the office of the Governor shall have full power to fill the same by appointment, as provided in Section 2351. Until such vacancy be filled by appointment or election, the Judge of Probate of the county shall take charge of the office, * * *."

Section 2351 has received the consideration of this Court in the case of *Cannon v. Sligh*, 170 S. C., 45, 169 S. E., 712. About the construction of the opinion of the Court therein has arisen, in the present case, a diversity of opinion. The intervenor, Mr. Wallace, holds that that case is "on all fours" with the present case, is decisive of it. The petitioner, Mr. Limehouse, denies this contention and suggests a differentiation of the cases. The County Board of Canvassers construe that opinion as holding that Mr. Wallace holds office by appointment of the Governor until the general election of 1940. The State Board of Canvassers construe the *Cannon case* to be authority for their holding that there was no vacancy in the office of Clerk of Court for Charleston County when the election of November 7, 1938, was held, and, hence, the election for Clerk of Court was void. That finding must be based on the conclusion

that the appointment of Mr. Wallace by the Governor was for the unexpired term of Mr. Dunkin, *viz.,* until the general election of 1940.

We do not think that any of these interpretations of the Court's ruling in the *Cannon case* is correct.

Let us scan it.

The facts of the *Cannon case* are these, briefly stated:

At the general election of 1928, J. Hart Coker was elected Clerk of the Court for Darlington County; he died sometime in the year 1930. The Governor appointed Miss Law to hold until the next election. J. E. Cannon entered the Democratic primary in 1930, was nominated for the office, and was elected at the general election of 1930. He qualified and assumed the discharge of the duties of the office. He did not enter the election of 1932, but took the position that his election in the 1930 election was for the period of four years. In 1932 he instituted proceedings to enjoin the Darlington County Democratic Executive Committee from permitting anyone to enter the Demorcatic primary as a candidate for the office of Clerk of Court. Judge Dennis granted a temporary restraining order and required the respondents to show cause why the injunction should not be made permanent. By their return, the respondents took the position that Mr. Cannon was not elected to the office of Clerk for the full term of four years, but for the unexpired term of his predecessor, which would expire with the general election of 1932. Judge Dennis being disqualified, the matter was heard by Judge Stoll, who filed an order by which he held that Cannon was "either elected for the unexpired term of his predecessor in accordance with the provisions of Section 2351 (of the Code) or he was not elected at all." He refused to grant the injunction and dismissed the petition. From this order, Cannon appealed. After this appeal there were entries of several persons, candidates for the position of Clerk, in the primary. J. E. McLeod was nominated and was

elected in the general election of 1932. He intervened in the hearing in this Court, by permission of the Court.

The opinion was written by Mr. Justice (now Chief Justice) Stabler. He said: "The main and controlling question in the appeal is, Was the appellant, J. E. Cannon, elected to the office in question for the term of four years?"

He quotes the provisions of Section 27, Article 5 of the Constitution, and those of Section 2351 of the Code, both of which we have set out hereinabove. From the opinion we take the following:

"By the above-quoted provision of the Constitution of 1895, the term of office of clerk of court, as we have seen, is fixed at four years; and it is well settled, under the decisions cited, that the Legislature has no power to vary this term. But it may, where the Constitution does not designate the time for holding the election, as we find to be the case here, properly fix such time by legislative enactment (*State ex rel. Anderson v. Sims, supra* [18 S. C., 460]); and where the organic law does not provide for the filling of vacancies, it may also provide therefor (*Reister v. Hemphill* [2 S. C., 325], *supra*). As we have observed, Sections 2350 and 3577 of the Code fix as the time for the election of clerk of court in this state every alternate general election, counting from 1888. It is not contended that these sections are in conflict with the Constitution; on the contrary, it is conceded that they are supplementary thereto and valid. It is also agreed that, counting from the year 1888, an election for clerk of court, as provided for by these sections, would fall in the year 1932. The appellant, as we have indicated, was elected at the general election of 1930. It is, therefore, contended by counsel for respondents that any election for clerk of court at that time was necessarily held under Section 2351; that if this section is valid, appellant was elected, in accordance with its clear provisions, to hold only for the unexpired term; and that if it is unconstitutional, he was not elected at all. We are in

accord with this contention. Section 2351 provides for an election 'to fill the unexpired. term,' in the event of a vacancy caused by death, etc., which in the present case was for a period of two years. In *Wright v. Charles* it was held that 'if the Legislature had, by express enactment, declared that one elected to fill the unexpired term of the office of Clerk, made vacant by any cause, should only hold for such term, it would have been inoperative and void, for as was said by Mr. Justice Wright, in the opinion of the Court in *Reister v. Hemphill, 2* S. C., 325, "where the organic law fixes the term of office, it is not in the power of the Legislature, by an Act, to change that term." '

"It is perfectly clear, from a reading of Section 2351, that the Legislature intended, as is specifically provided therein, that an election held thereunder—in this case for clerk of court—'is to fill the unexpired term,' and that the person so elected shall hold the office for such term only. Unquestionably, therefore, the Legislature attempted, by this enactment, to vary, as the result of such election, the term of office of clerk of court fixed in the Constitution as four years. This, as held in the *Wright case,* it was without power to do."

The final conclusion of the able opinion is in these words: " * * * We, therefore, conclude that the section, so far as it provides for the holding of the election, does not meet all the tests or conditions on which the result contended for by the appellant depends. See *Gillespie v. Blackwell,* 164 S. C., 115, 161 S. E., 869. It necessarily follows, and we so hold, that so much of Section 2351 as provides for an election 'to fill the unexpired term' and for the tenure of office of the person so elected, is in conflict with Section 27 of Article 5 of the Constitution of 1895, and is, therefore, inoperative and void."

This holding does not conflict with or impair the efficiency of that provision of Section 2351 that a person appointed, as was appointee in this case, holds the office un-

til the next general election. Nor does it run counter to the provision of Section 3094 of the Code, to wit: " * * * The person so appointed to hold his office, in all cases in which the officer is elective, until the next general election and until his successor shall qualify; * * *."

In the *Cannon case,* Mr. Cannon ran in the general election of 1930, and was elected. Assuming that his election was for the unexpired term of Mr. Coker, he did not enter in the election of 1932, at which time the period of four years for which his predecessor had been elected, expired. His election in 1930 could not carry him beyond that time.

Now, in the present case, Mr. Wallace was appointed, "his commission to continue in force for the term provided. by law." We have seen that by law his commission could not continue of force beyond the next general election after his appointment, which was the general election of 1938. He did not enter in that election. If he had done so and had been elected, it could only have continued his commission in force until the general election of 1940, at which time the term for which Mr. Dunkin had been elected would have expired. Necessarily, this created a vacancy in the office of Clerk of Court for Charleston County. Mr. Limehouse stood for that office in the election of 1938, and received all of the votes cast therefor. He was elected as Clerk until the next general election in 1940, at which time the period for which Mr. Dunkin was elected expires, and it is the time fixed by the Constitution and the Statutes for the election of his successor.

The case of *State ex rel. Gasque v. Singleton,* 100 S. C., 465, 84 S. E., 989, 990, is more in accord with the principle decided in the case of *Cannon v. Sligh, supra,* than any other case brought to our attention. In that case Mr. Wells was elected Solicitor of the Twelfth Circuit in 1912, and died in February, 1913. That is an elective office in which the person elected holds for a term of four years.

On February 4, 1913, the Governor appointed Mr. L. B. Singleton to hold the office for the whole of the unexpired term. In the general election of 1914 Mr. Gasque was elected Solicitor and was commissioned by the Governor, and action was brought to determine who was Solicitor. Mr. Chief Justice Gary wrote the opinion of the Court. He quoted from the Constitution the following provision, found in Section 29 of Article 5: "There shall be one solicitor for each Circuit, who shall reside therein, to be elected by the qualified electors of the Circuit, who shall hold his office for the term of four years, * * *."

He also quoted the following from Section 695 of the Civ. Code, 1912:

"The following officers shall be appointed by the Governor:

"1. Any vacancy in an office of the Executive Department, occurring during a recess of the General Assembly. The terms of such appointment to be until the vacancy be filled by a general election, or by the General Assembly, in the mode provided by law."

From the opinion in the above case we take the following:

"The solicitor is an officer of the executive department, and therefore the provisions of Section 695 are applicable to him.

"Neither Section 694 nor Section 695 prescribes the length of time for which the appointment is to be made by the Governor. This, however, is fixed by Section 695, which limits the duration of the appointment as to solicitors until the vacancy can be filled by a general election, as it is an elective office. * * *

"But even if it was intended by the statutes to empower the Governor to appoint a solicitor for the full unexpired term, when a vacancy arose, such an enactment would be void. * * *

"The propositions herein announced are fully sustained by the case of *Smith v. McConnell*, 44 S. C., 491, 22 S. E., 721, and the cases therein mentioned."

The intervenor seeks to sustain his position by the authority of the case of *State ex rel. Anderson v. Sims*, 18 S. C., 460. While there is much similarity in the facts of that case and those of the present case, there is one fundamental difference, which disposes adversely of intervenor's contention. The *State ex rel. Anderson v. Sims case* was heard when the Constitution of 1868 was the controlling law; and that Constitution provided that the term of office of the Clerk of Court should be four years, and the election should be at every alternate general election to be calculated from 1868. Hence, when the Legislature undertook to provide for an election for Clerk of Court for Horry County in the year 1870, it was in direct conflict with the provisions of the Constitution, and the election was void. That case is not in conflict, but rather in accord, with the holding of the Court in the *Cannon case, supra*.

We are satisfied that the petitioner, Chris M. Limehouse, was duly elected Clerk of the Court for Charleston County at the general election on November 7, 1938, to hold the office until the general election of 1940.

Accordingly, it should be the judgment of this Court that the State Board of Canvassers do forthwith canvass the returns and count the ballots cast at the General Election for Clerk of Court of Common Pleas for Charleston County, declare the result and certify the same to the Secretary of State.

This opinion was written as the original opinion in this case, but inasmuch as the other members of the Court do not concur in it, it becomes the dissenting opinion.